WILMA GEORGE TAYLOR *v.* BOARD OF EDUCATION *et al.*

(No. 7158)

Submitted September 8, 1931.   Decided September 15, 1931.

*Forrest T. George,* for relator.
*Forrest B. Poling* and *J. Blackburn Ware,* for respondents.

HATCHER, JUDGE:

This is a proceeding in mandamus wherein the petitioner seeks to have the board of education of Valley District, Barbour County, required to permit her (a) to sign a teacher's contract, and (b) to teach Teter school for the school year of 1931-2.

The allegations in the petition are not very specific, but when aided by the admission in the answer, sufficiently establish the following occurrences:   On April 10, 1931, an order was entered at a meeting of the board appointing the petitioner as teacher of the Teter school for the school year 1931-2, and on April 11, 1931, W. M. Kittle, who was then president of the board, and D. B. McCauley, the secretary, signed a form of contract supplied by "the state department at Charleston" on which the appointment of the petitioner was evidenced.   A few days later the petitioner informed the secretary of the board that she wished also to sign the con-

tract, but was refused that right. On July 6, 1931, the board, changed in personnel, revoked the appointment.

In Code 1931, 18-7-1, prescribing the procedure for the appointment of a school teacher, the sole requirements are, that (1) the board of education shall make the appointment (on or before the first Monday in July in each year, if practicable), and (2) the appointment shall be in writing, according to the form of contract to be furnished by the state superintendent of schools. It is clear, in this case, that the board of education, as constituted on April 10, 1931, appointed the petitioner, and that such appointment was made in writing on April 11, 1931, on a form of contract, which the context of the answer implies was furnished by the state department of schools. A fair assumption follows that this form of contract is that of the state superintendent of schools, and cómplies with the statute. If so, then every act required of the appointive power was performed, as the statute provides that such contracts be retained by the secretary of the board. Under settled law, the appointment was complete without the plaintiff's acceptance and could not thereafter be revoked without good cause shown.

The leading case on appointments is the celebrated one of *Marbury* v. *Madison,* 1 Cranch 48, 54, decided in 1803, in which the great chief justice determined that the power of appointment has been exercised "when the last act required from the person possessing the power has been performed." In 1824, the supreme court of Kentucky, following *Marbury* v. *Madison,* emphasized the thought that the appointment is made by one person (or body), the acceptance by another; that the appointment necessarily precedes the acceptance and is accordingly a thing distinct from the acceptance, and concluded: "It cannot be, therefore, that the acceptance of the office by the person appointed is necessary to complete the appointment, within the meaning of the constitution; and of course, when a commission is made out, signed by the governor and transmitted to the person appointed, every act being then done which is within the power of the executive to do, his functions with respect to the appointment must be at an end, and the appointment, whether accepted or refused, must

be complete." *Justices* v. *Clark,* 1 T. B. Mon. 82, 85. These declarations have been accepted generally and ·are asserted with confidence by modern authorities. ''The acceptance of an appointment is not necessary to give it validity. The appointment is the sole act of those vested with the power to make it, just as the ecceptance is the sole act of the appointee.'' 2 R. C. L., p. 423, sec. 70. ''An appointment to office is complete when the last act required of the person or body vested with the appointing power has been performed.'' *Whitherspoon* v. *West,* 138 (Miss.) 310. ''It is well settled that when the appointing power has once exercised its functions, it has no more control.'' *Speed* v. *Common Council,* 97 (Mich.) 198, 207. Accord: 4 C. J., p. 1406; 46 C. J., p. 954, sec. 69.

That the legislature did not design to change the general law is shown by the fact that while the appointment of teachers must be made on or before the first Monday in July, the teachers are required to sign the contracts merely ''before entering upon their duties.'' As the schools ordinarily commence in September, it clearly appears that the appointments and the acceptances need not be concurrent.

The answer alleges that a petition was filed by all the patrons of Teter school, except two, requesting the board not to employ the petitioner; but a general replication was filed to the answer, no proof was taken in support of the allegation, and there is no semblance of *good cause* in the record for revoking the appointment.

Consequently, we hold that the refusal to permit the petitioner to sign the contract and the subsequent revocation of her appointment, were both unwarranted, and the writ will issue as prayed for.

*Writ issued.*