**UNITED STATES v. CITY OF CHARLES-TON et al.**

No. 919.

United States District Court
S. D. West Virginia.

May 18, 1950.

Leslie E. Given, United States Attorney, Charleston, W. Va., for plaintiff.

John J. D. Preston, and John L. Goshorn, Charleston, W. Va., for defendant City of Charleston.

Robert H. C. Kay, Charleston, W. Va., for defendant C. N. Haynes.

MOORE, District Judge.

The United States brings this action, praying that certain paving and sewer liens filed by the City of Charleston, West Virginia, against property of the United States be decreed to be void; that a certain paving certificate issued against said property by the City and now in the possession of defendant C. N. Haynes be also decreed to be void, and that the City and Haynes be required to execute releases of their purported liens. The City counterclaims against the United States in the amount of $2,089.85, based upon the above-mentioned liens. Defendant Haynes cross-claims against the City in the amount of $2,001.08, that being the face value of the paving certificate issued to him by the City; the cross-claim being contingent upon the ruling by the Court on the validity of the certificate. The parties have submitted the cause for decision upon stipulated facts.

The United States is the owner in fee simple of a tract of land fronting on both Capitol and Summers Streets in Charleston, West Virginia. The building situate on this land is called the "Federal Building". At present it houses the United States Court for this district, as well as other governmental agencies. In the past it was also occupied by the United States Post Office. In 1908, the City caused to be filed against this property a lien for the paving of Summers Street, in the amount of $74.76; in 1915, a lien for the paving of Summers Street, in the amount of $357.68; and in 1939, a lien for the installation of a sewer on Capitol Street, in the amount of $486.00.

In 1945, Haynes entered into a contract with the City whereby he undertook to pave Summers Street, and as part payment therefor Haynes accepted from the City a paving certificate in the amount of $2,001.08, assessed against this property of the United States. All proceedings by the City in assessing the property and issuing the certificate to Haynes were in accordance with the requirements of the City Charter and ordinances. The work performed by Haynes conformed to the specifications furnished by the City. The notice of lien against the United States was filed by the City on April 18, 1946.

The City Charter provides four methods of paying pavement costs: (1) from current general funds; (2) from funds derived from bond issues; (3) by special assessments against abutting property owners; and (4) by special assessments and issuance of paving certificates to reimburse the contractor. The last named method (certificate plan) was used by the City in contracting with Haynes. The Charter provides that certificates issued under the certificate plan shall constitute a lien upon the property against which they are assessed, and further, that the City, in issuing such certificates, shall not be held as guarantor or in any way liable for payment thereof. The United States made no objection to the assessment within the time required by law, nor did Haynes object to the laying of the assessment against the United States, or to the issuance and delivery of the paving certificate in question.

The prayer of the United States that the liens and certificate be decreed to be void, and that releases therefor be ordered to be executed must be granted. In the absence of an act of Congress allowing lands of the United States to be subjected to special assessments for local improvements, it has been uniformly held that such lands are not liable therefor. See cases collected in 90 A.L.R. 1140. No act of Congress authorizing such assessments exists, and the City therefore exceeded its lawful power in assessing property of the United States, and in issuing a paving certificate purporting to create a lien against that property. Such assessments are void. Mullen Benevolent Corp. v. United States, 290 U.S. 89, 54 S.Ct. 38, 78 L.Ed. 192. Therefore, the liens filed by the City, and the certificate issued to Haynes, being based upon void assessments, are themselves void. It necessarily follows that the counterclaim made by the City against the United States, based upon void liens, must be dismissed.

In determining whether the City is liable to Haynes on his cross-claim for the amount of the certificate, it is necessary to inquire whether there is any avenue open to the City should it attempt voluntarily, that is, without judicial coercion, to follow a course resulting in reimbursement of Haynes. Such inquiry is pertinent, because a Court cannot require of a municipality that which the latter cannot lawfully accomplish had the Court not spoken. "The law is not properly chargeable with the absurdity of implying an obligation to do that which it forbids." Edison Electric Co. v. City of Pasadena, 9 Cir., 178 F. 425, 431.

As was stated above, four methods of paying for street improvements are provided by the Charter: general revenues, bonds, special assessments and certificates. Payment to Haynes, if accomplished, must be under some method permitted by the Charter. If a reassessment were made, so as to apportion the costs originally charged against the United States among the other property owners whose property fronts on Summers Street, the provisions of the Charter would be violated. Section 88 of the Charter relating to the certificate plan of payment requires that the fixing of the amount of assessment shall be as prescribed by Section 61 (relating to special assessments). Section 61 requires that each owner be charged with such portion of the total cost of the improvement as the frontage in feet of his land abutting the street bears to the total frontage of all lands so abutting. To assess the cost charged to the United States to the other owners would unbalance this statutory equation. Section 88 further provides that assessment under the certificate plan "shall include the whole cost of such improvement". This provision precludes the City from paying to Haynes the amount assessed against the United States from general revenues or from monies derived from bonds, since if this were done "the whole cost of such improvement" would not be included in the assessment made under the certificate plan. To require the City to reimburse Haynes, when under its Charter it is without the power to do so independently of court decree, would be contrary to well established principles of

law. See Edison Electric Co. v. City of Pasadena, supra; West Tennessee Power and Light Co. v. City of Jackson, 6 Cir., 97 F.2d 979; City of Bristol v. Dominion National Bank, 153 Va. 71, 149 S.E. 632.

This conclusion may at first blush appear to be in conflict with the holding in Curry v. City of Kenova, 112 W.Va. 241, 164 S.E. 249, wherein the West Virginia Supreme Court of Appeals sustained a recovery by contractors on certificates issued in amounts in excess of those permitted by charter (the assessments being by charter limited to 25% of the value of the property). The Court there held that the assessments made by the City in excess of 25% were *ultra vires* and that the City of Kenova was liable therefor. However, the real basis of the Court's decision in the Curry case was that the contractors there were not chargeable with notice of the *ultra vires* act. The Court 112 W.Va. at page 246, 164 S.E. at page 251 of the opinion very carefully pointed out that there was nothing to put the contractors on notice that such assessments were void; and inferred that if the contractors had been put on notice no recovery would have been allowed. At the same page, reference is made to City of Enid v. Warner-Quinlan Asphalt Co., 62 Okl. 139, 161 P. 1092, the Court saying that in the Enid case both the contractor and the City knew that the assessment was against property of the United States and could not be enforced, such knowledge precluding recovery. In the instant case Haynes was charged with knowledge of the fatal defect inherent in the certificate. He was put on notice that the assessment by the City of United States property was a void (and *ultra vires*) act. Persons contracting with a municipal corporation are charged with knowledge of the corporation's contractual powers and the limitations thereof. 63 C.J.S., Municipal Corporations, § 979.

The fact that the law charges Haynes with knowledge of the City's lack of authority to levy the assessment, and with like knowledge of the Charter provision that the City, in issuing such certificate, was not a guarantor or in any way liable for payment thereof, precludes recov-

ery. A person contracting with a municipality acts at his peril, and "is *persona non grata* with the courts, which must look to the protection of the public" in such matters. See Burgess v. City of Cameron, 113 W.Va. 127, 166 S.E. 113, 115, reh. den., 113 W.Va. 133, 166 S.E. 703.

The language in Holswade v. City of Huntington, 96 W.Va. 124, 122 S.E. 449, is directly in point on this question. In that case assessments were made against property of the state. The Court, speaking through Judge Lively, said, 96 W.Va. at page 129, 122 S.E. at page 451: "The law under which these certificates are issued is as much a part thereof as if written therein, and the contractor, as well as any purchaser, is charged with notice that the city does not guarantee them and is in no way liable. The contractor takes them at his own risk. * * * It is quite generally held that the municipality is not liable for payment of void or unenforceable certificates, unless the contract makes it liable."

Haynes accepted the certificate without objection. He was charged with knowledge that the act of the City was *ultra vires*. He contracted at his own peril, and therefore cannot recover.

For the above reasons the cross-claim of Haynes is dismissed.

An order in accordance with this opinion may be presented for entry.