## Strine, Appellant, v. Upper Merion Township School District.

Argued December 8, 1941.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Rhodes, Hirt and Kenworthey, JJ.

*Aaron S. Swartz, Jr.,* with him *Samuel H. High, John M. Dettra, Louis M. Childs, II, Samuel H. High, Jr.,* and *Aaron S. Swartz, III,* for appellant.

*Robert Dechert,* with him *Frederick B. Smillie,* for appellee.

OPINION BY CUNNINGHAM, J., July 23, 1942:

The litigation out of which this appeal by the plaintiff, Robert R. Strine, from the decree of the court below arose had its inception in the adoption by the Board of Directors of the School District of Upper Merion Township, Montgomery County, on December 18, 1939, of the following resolution:

"Whereas, there appears no record in the official minutes of the Board indicating the election of Robert R. Strine in the manner prescribed by law either as Teacher or Principal in this School District; and Whereas, it is the conclusion of this Board that it would not be for the best interests of the School District that Robert R. Strine at this time be elected either as Teacher or Principal; Now Therefore, Be It Resolved: That the Supervising Principal be, and he hereby is, instructed to notify Mr. Strine that he has no status as either Teacher or Principal in this School District."

A bill in equity was promptly filed by Strine praying

for an injunction restraining the directors, their agents and their employees, from interfering with him in any way in the assumption and performance of his duties as high school principal of the district, or dismissing him or terminating his contract as a professional employee under the Teachers' Tenure Act, except for cause shown, and for a mandatory injunction compelling the payment to him of compensation as a high school principal for the school year 1939-40. The defendants answered, in substance, that Strine had no legal status either as a teacher or a high school principal in the district because he had not been legally elected to either position. As indicated by the court below, if preliminary objections had been filed under Equity Rule 48 they would probably have been sustained, under the authority of *Ryan v. Reddington,* 240 Pa. 350, 87 A. 285, upon the ground that plaintiff had an adequate remedy at law. As such objections were not filed the court proceeded under the provisions of the Act of June 7, 1907, P. L. 440, Section 1, 12 PS §1227, to a final determination "with the same effect as if upon a hearing before the court, without a jury, upon agreement filed." It may be noted in passing that the plaintiff's qualifications to serve as a teacher and high school principal were not challenged nor were any charges of any kind preferred against him.

Two questions, and only two, were raised by the pleadings: (a) Whether plaintiff was legally elected a teacher by the then board of directors of the defendant district on April 6, 1931; and (b) whether on August 6, 1934, he was legally elected by the board of directors then in office as principal of the high school of the district. The chancellor, DANNEHOWER, J., made findings of fact and stated conclusions of law, all of which were adopted by the court, in banc, upon each of these questions.

1. The findings of fact relative to the alleged election of plaintiff as a teacher on April 6, 1931, may be

thus summarized. On that date at a regular meeting of the school board a resolution was passed electing plaintiff as a teacher of academic subjects. This resolution was noted by the then secretary, Monroe A. Evans, in his own handwriting in a book kept by him for the purpose of making notes at the meetings of the board; it showed the election of plaintiff at a salary of $1600 by the affirmative vote of a majority of the directors and showed how each member voted, as required by the Act of May 18, 1911, P. L. 309, Art. IV, Section 403, 24 PS §334.[1]

The difficulty about this election is that, as stated in the eighth finding of fact: "Through inadvertence and mistake, this resolution was not transcribed by Mr. Evans, secretary, into the minute book of the defendant school district"; therefore, as further found, "The official minutes of the School Board of the Township of Upper Merion, dated April 6, 1931, do not contain an election or appointment of the plaintiff as teacher or principal."

Citing, among others, the cases of *Whitehead v. School District,* 145 Pa. 418, 429, 22 A. 991; *McCrea v. School District,* 145 Pa. 550, 557, 22 A. 1040; *Toye v. Exeter Borough School District,* 225 Pa. 236, 74 A. 60; *Potts v. Penn Twp. School District,* 127 Pa. Superior Ct. 173, 193 A. 290, the chancellor held that the resolution of April 6, 1931, had not been "duly recorded" and consequently did not give plaintiff the status of a teacher. He further held, however, that the validating Act of May 1, 1931, P. L. 76, Section 1, 24 PS §335a,[2]

---

[1] "The affirmative vote of a majority of all the members of the board of school directors in every school district in this Commonwealth, duly recorded, showing how each member voted, shall be required in order to take action on the following subjects: ...... Appointing or dismissing ...... principals and teachers."

[2] "...... where any board of school directors of any school district has heretofore taken any action, performed any duty, or exercised any power, pursuant to the affirmative vote of a

had cured the "defects" in the procedure of the board. Accordingly, the chancellor entered the following as his first conclusion of law: "The plaintiff has the status of a legally elected teacher employed by the defendant."

No exception was taken by the representatives of the defendant district to this conclusion of law. The first branch of the case has therefore been adjudicated in plaintiff's favor and is not involved upon this appeal.

2. A teacher's contract was executed on June 1, 1931, by the president and secretary of the board and the plaintiff under which plaintiff taught biology, science, and social studies in the Upper Merion High School for the school years of 1931-32, 1932-33, and 1933-34, and received the salaries to which he was entitled. During this period plaintiff's teaching schedule was lighter than the average teacher and he performed certain of the administrative duties of a principal with the approval of the board and Mr. Lloyd Moll, the then superintendent of schools for the district.

On August 6, 1934, a resolution was adopted by the board which plaintiff contends had the effect of electing him to the status of high school principal. This

---

majority or greater proportion of all the members of such board, and the secretary of the board or the board did not actually record on the minutes of the board the vote showing. how each member voted as required by law, then in each and every case the transactions of the board of school directors, or the officers thereof, heretofore enumerated shall be and the same are hereby ratified, confirmed and validated, notwithstanding any. defects or errors of law in the tranactions of such board of school directors and the officers thereof, if .such transactions by the board of school directors and the officers thereof did not evidence any fraud, corruption, misappropriation, dishonesty, manipulation of funds redounding to the benefit of the members of the board of school directors, or any one else, or any conspiracy to violate the provisions of the school laws of the Commonwealth, and the school district has not suffered any pecuniary loss as the result of such transactions, but has received full value and a fair return for all moneys expended. ......."

assertion is strenuously denied by the representatives of the defendant district and the remaining issues in the case arise out of these conflicting contentions. The resolution reads:

"At the regular June meeting of our Board of Directors the superintendent was instructed to prepare a list of *employees* whose salaries were considered most seriously out of alignment in relation to the rest of the *employees* of the district. Salary increases to be granted to these *employees,* were to be granted out of savings effected in the employment of new teachers. In the report to the Board at the July meeting, the Superintendent included seven names. Mr. Rinehart (a director), in conjunction with Mr. Moll our superintendent, worked out an itemized statement of the cost to the school district of the increases listed below after savings effected through new *employees* have been deducted:

| Mr. Brackin | increased | $150 per year |
|-------------|-----------|---------------|
| * * * * * * | | |
| Mr. Strine | increased | $360 per year |
| * * * * * * | | |

A motion made by Mr. Rinehart, receiving as second, Miss Myers, that the statement inserted above prepared by our superintendent, be adopted.

Vote, affirmative: Mr. Rinehart, Mr. Flack, Mr. Wilton, Miss Myers.

Negative: Mr. Hill ......"

(Italics supplied and five names of other employees omitted.)

The facts found by the chancellor relative to matters subsequent to the adoption of the above resolution were substantially these. The resolution was recorded in the minutes of the school board and from that time forward until the school year of 1938-39 plaintiff fulfilled the duties of a high school principal with the knowledge and approval of the board and it is conceded

that he was regarded by inhabitants of the district as having the status of a high school principal therein. Subsequent to the enactment of the Teachers' Tenure Act of April 6, 1937, P. L. 213, 24 PS §1121, et seq., a contract was executed on May 6th of that year between plaintiff and the board in which plaintiff is described merely as a "professional employee," and in which it is provided he should teach in the district for "an annual compensation of $2,250." Without any special resolution of the board plaintiff was paid the salary of a high school principal with the usual annual increments up to and through the school year 1938-39, the amount for that year being $2375. For the year 1939-40, during which this litigation was pending, he was paid by agreement of the parties $2375 without prejudice to the rights of either.

On July 1, 1938, Warren A. Cocklin was elected supervising principal of the Upper Merion School District to succeed Superintendent Moll and differences apparently arose between him and the plaintiff. During the school years 1938-39, and 1939-40, plaintiff was relieved of most of the duties pertaining to the office of high school principal, which he had previously performed, and on December 18, 1939, the resolution, first above quoted, in which it was declared that plaintiff had no status either as a teacher or principal in the district, was adopted.

In the course of his discussion upon the branch of the case with which we are now concerned, the chancellor said:

"The second question for consideration is, whether or not the plaintiff has the status of a high school principal employed by the defendant. The plaintiff has sought to establish this status in three ways. First, it is urged that the resolution of the defendant school board, duly recorded on its minutes and dated August 6, 1934, appointed him a principal. ...... A reading

of this resolution shows that it contains no language which can possibly be construed to effect an election of the plaintiff as a principal. Anticipating this construction, the plaintiff urges secondly that the word 'employee' as contained in the resolution is ambiguous and that therefore parol evidence is admissible to show that the meaning of this term as applied to the plaintiff means 'principal.' It is unnecessary to dwell upon this point, for even assuming for the purposes of discussion that such be the fact, still the tenor of the resolution is only to increase the salary of that employee and not to elect him to the position by which he is designated in the resolution. ...... At no time did the board pass any resolution which elected the plaintiff a principal. The most the evidence establishes is that certain members of the board of school directors intended the resolution of August 6, 1934, to be an election of the plaintiff as principal. However, these minutes cannot be supplemented by declarations of the officials of the school district: *School District of Dennison Twp. v. Padden,* 89 Pa. 395; *Dyberry School District v. Mercer,* 115 Pa. 559, *Com. ex rel. v. Sunbury School District,* 335 Pa. 6, 10, and *Ryan v. Norwegian Township School District,* 39 Pa. C. C., 506.

"The evidence shows that when the plaintiff entered the performance of the duties of a teacher in 1931 he also performed administrative duties. These administrative duties increased until they resulted in the resolution of August 6, 1934, increasing the salary of the plaintiff comparable to the work he was then doing. Thereafter, the plaintiff performed the duties of a high school principal. The most this evidence shows is that the plaintiff acted and performed the duties of a high school principal. It fails to establish that he was at any time elected a principal by resolution of the board of school directors."

To the cases cited by the chancellor upon the question

of the inadmissibility of parol evidence to supply deficiencies in the resolution may be added: *Potts v. Penn Twp. School District,* supra, [127 Pa. Superior Ct. 173, 193 A. 290] and *Waltman v. Albany Twp. School District,* 64 Pa. Superior Ct. 458. This is not a case in which the minutes clearly disclose an election and parol evidence would be essential merely to identify the office to which the election applied.

It may also be noted that the resolution did not, in fact, mention or designate in any way the respective positions then held by the seven "employees" whose salaries were increased. Moreover, an inspection of the full minutes of the meeting of August 6, 1934, discloses that the board clearly understood the distinction between merely increasing the salary of an employee and electing a teacher or principal. When the board intended to elect a teacher it said so, as appears from the following excerpt:

"We then went into the election of teachers to fill the vacancies caused by the Resignation of Mrs. Kepner and Mr. Nelson.

\* \* \* \* \* \*

"On motion of Mr. Rinehart, receiving as second, Miss Myers, and the affirmative vote of all members present, Owen L. Helfferich of Germantown, a graduate of Gettysburg and Syracuse University, was elected as a high school teacher to fill the vacancy created by Mr. Gordon Nelson at a salary of $1200 per year."

A further contention made in behalf of plaintiff was that any deficiencies in the resolution were cured by the validating Act of March 30, 1937, P. L. 113, Section 1, 24 PS §337a. The chancellor correctly held this act was of no assistance to plaintiff. It applies only to the validation of legally defective *contracts for "labor, materials and supplies* for the school district."[3]

---

[3] "Whenever any board of school directors of any school district shall have heretofore contracted for *labor, materials,* and

Obviously, it has no application to contracts between a school district and a professional employee. The *election* of a teacher or principal is a matter entirely separate and distinct from the execution of the *contract* between the board and such teacher or principal. See *Com. ex rel. Joseph Ricapito v. Bethlehem School District et al.,* 148 Pa. Superior Ct. 426, 25 A. 2d 786.

The controlling facts relative to the adoption of the resolution of August 6, 1934, were not in controversy before the chancellor, and we are in accord with his conclusion of law based upon them. It reads: "The plaintiff does not have the status of a principal appointed and employed by the defendant."

In view of this conclusion and of the fact that plaintiff has been paid $2375 for the year 1939-40, the prayer of his bill that the district be directed to pay him "on a basis of $2500" for that year could not be granted. The decree nisi entered by the chancellor on August 5, 1940, dismissed the bill but directed the defendant district to pay the costs. As we understand this decree, it left the plaintiff in the status of a teacher,

---

*supplies* for the school district, the purchase of which by contract is authorized under the provisions of the school laws of the Commonwealth, and such board of school directors has actually received such labor, materials, and supplies, and the same are being used by the school district, if the said contract does not evidence any fraud or conspiracy to violate the provisions of the school laws of the Commonwealth, and the school district has not suffered any pecuniary loss as the result of such contract, then such contract shall be valid and binding on the school district, and payment for such labor, materials, and supplies by the school district is hereby authorized, ratified, confirmed and validated, notwithstanding the fact that such contract was legally null and void by reason of the failure to advertise for bids, or by reason of defect in the advertising, or by reason of any other defect in compliance with or in the failure or omission to comply with the school laws of this Commonwealth regulating the award of contracts for such labor, materials, and supplies." (Italics supplied.)

but not a principal, in the defendant district. The only exceptions to the decree nisi were filed by the plaintiff. They were considered and dismissed by the court below, in banc, in an opinion filed November 27, 1940, and a final decree, dismissing the bill at the costs of defendant, was entered.

Nine of the ten assignments of error are based upon the dismissal of plaintiff's exceptions and the tenth on so much of the final decree as dismissed the bill. None of them can be sustained.

Decree affirmed, costs of this appeal to be paid by appellant.